UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

CARRIE JANE C. [1]                                                    Case No. 6:20-cv-00339-AC

              Plaintiff,                                               OPINION AND ORDER

    v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

              Defendants.

ACOSTA, Magistrate Judge:

    Plaintiff Carrie Jane C. ("Plaintiff") filed this action under section 205(g) of the Social Security Act ("Act") as amended, 42 U.S.C. § 405(g), to review the final decision of the Commissioner of Social Security ("Commissioner") who denied her social security disability insurance benefits ("Benefits"). The court finds the Commissioner erred in failing to provide the

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

PAGE 1 - OPINION AND ORDER

requisite justification for rejecting the opinions of the reviewing physicians or reconciling the inherent conflict between medical opinions. Accordingly, the Commissioner's final decision is reversed and remanded for further proceedings.[2]

*Procedural Background*

On or about December 28, 2016, Plaintiff filed an application for Benefits alleging an onset date of May 30, 2013. The application was denied initially, on reconsideration, and by Administrative Law Judge John D. Sullivan ("ALJ") after a hearing. The Appeals Council denied review and the ALJ's decision became the final decision of the Commissioner.

*Factual Background[3]*

Plaintiff is fifty-nine years old. She graduated from high school. Her past relevant work experience includes office manager, office coordinator, and referral coordinator. She has not been involved in a successful work attempt since May 30, 2013. She alleges disability because of post-traumatic stress disorder ("PTSD"), depression, anxiety, bipolar symptoms, thyroid problems, and sleep issues. Plaintiff last met the insured status requirements entitling her to Benefits on December 31, 2018.

I. Testimony

In the Adult Function Report dated February 7, 2017 ("Report"), Plaintiff reported she lived with her husband and spent her days in bed or watching television. (Tr. of Social Security Administrative R., ECF No. 13 ("Admin. R."), at 195-96.) She explained her "depression, anxiety,

---

[2] The parties have consented to jurisdiction by magistrate judge in accordance with 28 U.S.C. § 636(c)(1).
[3] Plaintiff argues only that the ALJ erred in rejecting opinion evidence she was limited to "comprehending and carrying out 1-2 step tasks." Consequently, the court limits its summary of the record to evidence relevant to this contention.

PTSD and bipolar make it hard to get out of bed and function with daily activities. I [cannot] concentrate or remember things." (Admin. R. at 195.) She bathes and washes her hair once a week, and needs her husband to remind her to tend to personal grooming and to take her medications. (Admin. R. at 197.) She prepares food, such as sandwiches or soup, every other day but has difficulty concentrating long enough to make a whole meal. (Admin. R. at 197.) Except for laundry, Plaintiff's husband does all the housework and yardwork because Plaintiff lacks the necessary energy. (Admin. R. at 198.) She is able to drive and shop alone in stores for groceries every two weeks but does not handle money because she tends to spend it all. (Admin. R. at 198-99.) While Plaintiff communicates with others by telephone occasionally, she is not as outgoing or sociable as she once was. (Admin. R. at 199-200.) Plaintiff reported she has difficulty remembering, concentrating, understanding, following spoken instructions, completing tasks, and handling stress, but gets along well with authority figures and can follow written instructions "well enough." (Admin. R. at 200-01.)

At the November 21, 2018 hearing before the ALJ ("Hearing"), Plaintiff testified she quit her job as a referral coordinator for a podiatrist in 2013 due to chaos with a co-worker, anxiety, depression, and bipolar symptoms making it difficult for her to concentrate, comprehend her job duties, and make decisions. (Admin. R. at 40.) Her bipolar symptoms improved with medication, but she still has issues with depression and anxiety. (Admin. R. at 41-42.) A 2015 episode of brain inflammation affected her speech, short-term memory, and ability to multitask. (Admin. 43-44.) Plaintiff testified it was unlikely she could perform jobs requiring only a simple, single task due to her difficulty remembering instructions. (Admin. R. at 45.) She has difficulty organizing

PAGE 3 - OPINION AND ORDER

her daily life, such as paying bills on time. (Admin. R. at 45-46.) She also has PTSD that causes her to become emotional when triggered. (Admin. R. at 46.)

II. Medical Evidence

*A. Treating Physicians*

From June 2011 to January 2014, Ngan-Lien T. Nguyen, M.D., treated Plaintiff for anxiety, depression, and hypothyroidism and at least annually reviewed, renewed, or adjusted her medications. (Admin. R. at 231-251.) In late 2015, Plaintiff established care with Harry Taylor, M.D. ("Dr. Taylor"), at the Umpqua Regional Medical Center ("Umpqua"), for depression, memory loss, and medication refills. (Admin. R. at 291-308.) Dr. Taylor reported Plaintiff remembered "2/3 items . . . on short term memory test[,] could not do serial 7s, did serial 3's with one mistake, could not draw clock and could not recall more than 5 presidents. She gave up easily on tasks." (Admin. R. at 308.)

On January 11, 2015, Plaintiff was treated by the emergency department of Bay Area Hospital ("Hospital") for "altered mentation, diarrhea, nausea, and vomiting." (Admin. R. at 334, 336.) The medical records describe Plaintiff as "quite confused, has been thrashing in the gurney all around, and had been trying to pull her IV line, moving bilateral upper and lower extremities." (Admin. R. at 338.) The Hospital admitted Plaintiff for various tests and further evaluation, hydration, blood pressure control, and seizure and fall precautions. (Admin. R. at 338-39.) Plaintiff was discharged on January 19, 2015, after gradual improvement of her mentation, diarrhea, nausea, and vomiting but the exact cause of the abnormal MRI findings remained unclear. (Admin. R. at 332.) The discharge diagnoses included altered mental status, possible posterior leukoencephalopathy, depression, and hypothyroidism. (Admin. R. at 332.)

David Ball L.M.F.T. ("Ball") provided Plaintiff mental health counseling services from March 2015 to May 2015 with the goal of addressing symptoms of anxiety (shaking and pacing) and improving Plaintiff's ability to manage household tasks. (Admin. R. at 444.) Plaintiff explained she had "difficulties with concentration and memory, reporting that over the last several months it had become 'so bad, I could not remember how to open a refrigerator door,' though she also reports that this is improving." (Admin. R. at 445.) On March 5, 2015, Ball observed no notable concerns with Plaintiff's thought content/process, memory, intellectual functioning, or perception. (Admin. R. at 446.) In late May 2015, Carrie reported her depression was "better" and her anxiety was "down," and "agreed that she had accomplished her treatment goals and could not identify other treatment goals at this time." (Admin. R. at 441.)

In July 2015, Dr. Taylor transferred responsibility for Plaintiff's primary care to Nicole Engler, F.N.P., an Umpqua provider ("Engler"). (Admin. R. at 286.) Over the next year, Engler managed Plaintiff's anxiety and depression mediations. (Admin. R. at 263-86.)

Plaintiff sought a referral for psychiatric care in December 2016, describing a history of anxiety, depression, and adjustment disorder with anxious mood and expressing concern she might be bipolar. (Admin. R. at 259-60.) Michael McNamara, M.S.N., P.M.H.P.N., another Umpqua provider ("McNamara"), assumed Plaintiff's mental health care at that time. (Admin. R. at 384.) During the psychiatric diagnostic interview examination, Plaintiff reported her depression was worse in the winter; she suffered from difficulty sleeping and lack of motivation, concentration, and appetite; experienced feelings of hopelessness and helplessness; worried excessively; and had a history of three panic attacks. McNamara diagnosed Plaintiff with Bipolar II disorder, depression, and PTSD and provided mental health counseling and medication management off and

on over the next two years, noting a general decrease in anxiety and improvement in mood and sleep with occasional periods of increased symptoms due to stressors, such as marriage and money issues. (Admin. R. at 384-85, 469-501.)

In mid-2017, Plaintiff also sought treatment for her anxiety, depression, mania, and PTSD at the Community Health Alliance. (Admin. R. at 429.) Plaintiff reported she spent her days watching television and gardened when the weather was nice but also stated she had difficulty concentrating on things, such as reading the newspaper or watching television. (Admin. R. at 429-38.) Wendelyn Seal, L.C.S.W., provided mental health counseling services through February 2018, after which she "discharged" Plaintiff noting Plaintiff 'missed numerous therapy appointments, making progress difficult" and Plaintiff moved away from the area. (Admin. R. at 421-28, 533-36.)

In early 2018, Plaintiff began treatment with Andrea Nutt D.N.P, F.N.P., primarily to obtain a refill of her thyroid medication. (Admin. R. at 458-62.) She then visited the Hospital emergency room seeking a refill of her depression and anxiety medication. (Admin. R. at 573.) Plaintiff reported she had been taking the medications for years, was doing well on them, and had an appointment with a new mental health provider. (Admin. R. at 573.) In October 2018, Bhavani Peddagovindu, M.D., evaluated Plaintiff for regular health maintenance and bipolar follow-up, ordered a CT scan of Plaintiff's brain, adjusted Plaintiff's medications, and noted Plaintiff had been unable to establish care with a psychiatric provider. (Admin. R. at 575.)

   B.  *Consulting Physician*

Scott T. Alvord, Psy.D. ("Dr. Alvord"), performed an "adult psychodiagnostic evaluation" of Plaintiff on April 6, 2017, "as part of her application for [B]enefits." (Admin. R. at 370.) Dr.

Alvord specifically considered Plaintiff's reported PTSD, depression, anxiety, bipolar diagnosis, thyroid issues, and sleep problems and examined the impact of related symptoms on Plaintiff's employability. (Admin. R. at 370.)

Dr. Alvord indicated Plaintiff's long-term, short-term, and immediate/working memory were all intact. (Admin. R. at 372.) With respect to her attention and concentration, Dr. Alvord reported: "She recited 5 digits forward and 4 digits backward. She competed serial 7's without difficulty. She calculated 5 times 9 and divided 24 by 4 correctly. She spelled the word WORLD forward and backward correctly." (Admin. R. at 372.)

Dr. Alvord opined Plaintiff "meets the diagnostic criteria for Bipolar II as well as an Anxiety Disorder not otherwise specified," but he did "not see the full diagnostic criteria for PTSD." (Admin. R. at 373.) He questioned why Plaintiff was not involved in therapy and treatment for bipolar disorder, noted an antidepressant might alleviate some of her depressive symptoms, and believed her prognosis was fair with more appropriate care. (Admin. R. at 373.) His functional assessment provided:

> 1. The claimant would not have difficulty performing simple and repetitive tasks.
>
> 2. The claimant would have moderate difficulty performing detailed and complex tasks.
>
> 3. The claimant would have moderate difficulty accepting instructions from supervisors.
>
> 4. The claimant would have moderate difficulty interacting with co-workers and the public.
>
> 5. The claimant would have moderate difficulty performing work activities on a consistent basis without special or additional instructions/accommodations.
>
> 6. The claimant would have moderate difficulty maintaining regular attendance in the workplace.

PAGE 7 - OPINION AND ORDER

> 7. The claimant would have moderate difficulty completing a normal workday/workweek without interruptions from a psychiatric condition.
>
> 8. The claimant would have moderate difficulty dealing with usual stress encountered in the workplace.

(Admin. R. at 373-74.)

*C. Reviewing Physicians*

Joshua J. Boyd, Psy.D. ("Dr. Boyd"), reviewed Plaintiff's medical records and on May 9, 2017, opined Plaintiff suffered from the severe impairments of depressive, bipolar, and related disorders and anxiety and obsessive-compulsive disorders. (Admin. R. at 61.) He found Plaintiff moderately limited in her ability to understand, remember, apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage herself. (Admin. R. at 61.) Dr. Boyd believed Plaintiff's ability to remember locations and work-like procedures, and understand and remember very short and simple instructions, was not significantly limited and her ability to understand and remember detailed instructions was moderately limited. (Admin. R. at 63.) He determined Plaintiff was capable of comprehending, carrying out, and maintaining concentration, persistence, and pace for one- to two-step tasks but incapable of comprehending, carrying out, and maintaining concentration, persistence, and pace for more complex tasks. (Admin. R. at 63-64.) Neal Berner, M.D. ("Dr. Berner"), found Plaintiff not disabled on May 9, 2017. (Admin. R. at 54, 66-67.)

In a report dated July 3, 2017, Irmgard E. Friedburg, Ph.D. ("Dr. Friedburg"), another reviewing physician, agreed with the diagnoses and conclusions of Dr. Boyd. (Admin. R. at 76-77, 79-80.) Similarly, Lloyd Wiggins, M.D. concurred in Dr. Berner's finding Plaintiff was not disabled on July 3, 2017. (Admin. R. at 68, 82.)

\ \ \ \ \

PAGE 8 - OPINION AND ORDER

*D. Test Results*

An October 15, 2018, CT of Plaintiff's brain revealed no evidence of an acute intracranial abnormality. (Admin. R. at 577.) Additionally, the CT indicated the existence of a bilateral parietal encephalomalacia, suggesting remote infarction. (Admin. R. at 557.)

III.  Vocational Evidence

Harry A. Whiting, Jr., M.S., ABVE ("Whiting"), appeared at the Hearing as an impartial vocational expert and characterized Plaintiff's past relevant work of office manager, office coordinator, and referral coordinator in the manner performed as sedentary work with an SVP of seven, which requires two to four years of preparation. (Admin. R. at 48, 226.) The ALJ asked Whiting if a hypothetical individual of Plaintiff's age, education, and work experience with mental limitations described as: "[t]he ability to understand, remember, and carry out instructions would limit to performing simple, routine tasks as in reasoning level 2 or less[;] using judgment would limit to performing simple work-related decisions; is able to interact with supervisors, co-workers, and the general public on an occasional basis; and dealing with places in a work place setting would limit to simple work-related decisions," be able to perform Plaintiff's past work. (Admin. R. at 48-49.) Whiting testified such an individual would not be able to perform Plaintiff's past relevant work but would be able to work as a janitor, hand packager, or laundry worker. (Admin. R. at 49-50.) But if the individual was unable to remember instructions after a few attempts, they might be terminated. (Admin. R. at 52.)

IV.  ALJ Decision

The ALJ acknowledged Plaintiff had not engaged in "substantial gainful activity during the period from her alleged onset date of May 30, 2013, through her date last insured of December

31, 2018.  (Admin. R. at 17.)  He then found Plaintiff suffered from the severe impairments of "bipolar II disorder, anxiety disorder NOS, posttraumatic stress disorder (PTSD), and organic neurocognitive disorder."  (Admin. R. at 17.)  While conceding Plaintiff's impairments significantly limited her ability to perform basic work activities, the ALJ found such impairments did not meet or equal the severity of any listed impairment.  (Admin. R. at 17-18.)  As a result of her impairments, the ALJ considered Plaintiff capable of performing "a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can understand, remember and carry out simple, routine tasks consistent with reasoning level two or less; make simple work-related decisions; can occasionally interact with supervisors, coworkers, and general public; and any time-off task can be accommodated by normal breaks."  (Admin. R at 19.)  The ALJ deemed Plaintiff incapable of performing her past relevant work as an office manager/office coordinator, but capable of working as a janitor, hand packager, and laundry worker.  (Admin. R. at 23-24.)  Consequently, the ALJ found Plaintiff not disabled from May 30, 2013, through December 31, 2018, the last date insured.  (Admin. R. at 25.)

The ALJ gave great weight to the opinions of Dr. Boyd and Dr. Friedburg that Plaintiff "could comprehend, carry out, and maintain concentration, persistence and pace for 1-2 step tasks, have brief, superficial interaction with coworkers and supervisors, have occasional interaction with the general public, and respond appropriately to minor changes in the work setting," noting the opinions account for Plaintiff's depression and anxiety and are "consistent with the claimant's demonstrated abilities in the record and her mental status examinations overall, both of which indicate no significant limitations."  (Admin. R. at 22.)  On the other hand, the ALJ gave Dr. Alvord's finding of "moderate impairments in performing detailed and complex tasks, accepting

instructions from a supervisor, interacting with coworkers and the general public, performing work activities on a consistent basis, maintaining regular attendance in the workplace, completing a normal workday/week and dealing with usual workplace stress" only "some weight because according to the claimant's daily activities and performance on testing, she is capable of performing simple and repetitive tasks" and the "moderate impairments are in the context of inadequate treatment." (Admin. R. at 23.)

*Standard of Review*

The Act provides for payment of Benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). The burden of proof to establish a disability rests upon the claimant. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir.), *cert. denied*, 519 U.S. 881 (1996). To meet this burden, the claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). An individual will be determined to be disabled only if there are physical or mental impairments of such severity that the individual is not only unable to do previous work but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for Benefits because he or she is disabled. 20 C.F.R. § 404.1520; *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity,

Benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, Benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of the specifically listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant has performed in the past. If the claimant is able to perform work which he or she has performed in the past, a finding of "not disabled" is made and Benefits are denied. 20 C.F.R. § 404.1520(e).

If the claimant is unable to do work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy considering his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. *Distasio v. Shalala*, 47 F.3d 348, 349 (9th Cir. 1995). The claimant is entitled to Benefits only if he or she is not able to perform other work. 20 C.F.R. § 404.1520(f).

Judicial review of the Commissioner's decision is guided by the same standards. 42 U.S.C. § 405(g). The reviewing court must affirm the Commissioner's decision if the Commissioner

applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson* v. *Comm'r of the Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Robbins* v. *Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Tylitzki* v. *Shalala,* 999 F.2d 1411, 1413 (9th Cir. 1993).

The reviewing court may not substitute its judgment for that of the Commissioner. *Robbins,* 466 F.3d at 882; *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001). Thus, where the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld, even where the evidence can support either affirming or reversing the ALJ's conclusion. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995). In determining a claimant's residual functioning capacity, an ALJ must consider all relevant evidence in the record, including, *inter alia,* medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883, citing SSR 96-8p, 1996 WL 374184, at *5; 20 C.F.R. § 404.1545(a)(3) (2019); *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir.1996). The reviewing court must consider the entire record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence. *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007). However, a reviewing court may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir.

2007); *see also Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

*Discussion*

Plaintiff asserts the ALJ erred in failing to properly weigh the medical opinions by finding she was capable of understanding, remembering, and carrying out simple routine tasks consistent with a reasoning level of two or less. Plaintiff asks the court to enter an order reversing the Commissioner's final decision and remanding the matter for additional evidence and findings. The Commissioner contends the ALJ properly considered the evidence in accordance with the terms of the Act and related regulations, and the decision should be affirmed.

Plaintiff argues the ALJ failed to properly consider the opinions of the state agency reviewing physicians that she was limited to one- to two-step tasks. Specifically, Plaintiff argues a limitation to one- to two-step tasks is inconsistent with a reasoning level of two. Plaintiff argues, essentially, that the ALJ improperly rejected medical opinions related to her limitations of concentration, persistence, and pace.

The weight attributable to the opinion of a medical source depends, in part, on the professional relationship between the physician and the claimant.[4] Generally, a treating

---

[4] For all claims filed on or after March 27, 2017, the regulations set forth in 20 C.F.R. § 404.1520c (not § 404.1527) govern. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c (2019). Thus, the new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule. *See* 20 C.F.R. § 404.1520c. In this case, Plaintiff filed her claims for Benefits in December 2016, well before March 27, 2017. *See* 20 C.F.R. § 404.614 (defining when an application for benefits is considered filed). Thus, the court analyzes Plaintiff's claims utilizing § 404.1527 (providing the rules for evaluating opinion evidence for claims filed prior to March 27, 2017).

PAGE 14 - OPINION AND ORDER

physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than that of a physician who did not examine the claimant but formed an opinion based on a review of the claimant's medical records. *Holohan v. Massanari*, 246 F.3d 1195, 1201-1202 (9th Cir. 2001).

The ALJ can reject a treating or examining physician's opinion that is inconsistent with the opinions of other treating or examining physicians, if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). An uncontradicted opinion may be rejected only for clear and convincing reasons. *Thomas*, 278 F.3d at 956-957.

The opinion of a non-examining physician by itself does not constitute substantial evidence to reject the opinion of a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1996). It may constitute substantial evidence if it is consistent with other evidence in the record. *Magallanes v. Bowen,* 881 F.2d 747, 752 (9th Cir. 1989). Furthermore, an ALJ need not accept a physician's opinion that is brief, conclusory or inadequately supported by clinical findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Here, the ALJ gave great weight to the opinions of Dr. Boyd and Dr. Friedburg that Plaintiff "could comprehend, carry out, and maintain concentration, persistence and pace for 1-2 step tasks" finding them consistent with Plaintiff's demonstrated abilities and mental status examinations. (Admin. R. at 22.) However, the ALJ expressly found Plaintiff retained the ability to "understand, remember and carry out simple routine tasks consistent with reasoning level two or less." (Admin. R. at 19.)

\ \ \ \ \

Each job description found in the Dictionary of Occupation Titles ("DOT") includes a "definitional trailer," which uses a numerical system to identify the abilities a person needs in order to perform the given job. *See* DICTIONARY OF OCCUPATIONAL TITLES, App'x C (4th ed. 1991), available at 1991 WL 688702. The definitional trailer for each job includes a "reasoning development level," which uses a one-through-six scoring system to identify how much reasoning ability is required for a particular job. *Id.* Reasoning development levels one and two are defined as follows:

> Reasoning level two: "Apply commonsense understanding to carry out *detailed but uninvolved written or oral instructions.* Deal with problems involving a few concrete variables in or from standardized situations."
>
> Reasoning level one: "Apply commonsense understanding to carry out *simple one- or two-step instructions.* Deal with standardized situations with occasional or no variables in or from these situations encountered on the job."

*Id.* (emphasis added).

Judges in this district have held a limitation to one- to two-step tasks is more restrictive than reasoning level two and more comparable to reasoning level one. *C v. Comm'r of Soc. Sec. Admin.*, Case No. 6:19-cv-00147-YY, 2020 WL 886297, at *3 (D. Or. Feb. 24, 2020) ("Generally, district courts in the Ninth Circuit, and particularly in the District of Oregon, have drawn a clear distinction between the limitation to one- to two- step tasks and the limitation to simple, routine, repetitive tasks."); *Oxford v. Berryhill*, Civil No.: 1:16-cv-01763-JE, 2017 WL 7513227, at *11 (D. Or. Dec. 12, 2017) ("However, this Court, and other courts in this district, have held that a limitation to 1-2 step tasks is narrower than the more general limitation to 'simple, routine' tasks."); *Trujillo v. Colvin*, No. 3:13-cv-0620-SI, 2014 WL 2213218, at *5 (D. Or. May 27, 2014) ("The Court finds persuasive the reasoning of the cases holding that an RFC limitation that

specifically requires 'one- or two-step instructions' is inconsistent with Reason Level 2. It is the restriction to jobs requiring only one- or two-step instructions that primarily distinguishes Reasoning Level 1 from Reasoning Level 2.") Here, by finding Plaintiff capable of reasoning level two, the ALJ essentially rejected the opinions of Dr. Boyd and Dr. Friedburg that Plaintiff was limited to one- to two-step instruction and thus equivalent to reasoning level 1, without any discussion or justification. Consequently, the ALJ clearly erred by not providing the requisite justification for rejecting the reviewing physicians' opinions.

The Commissioner argues the ALJ's limitation to simple, routine, tasks is consistent with Dr. Boyd's finding Plaintiff was not significantly limited in her ability to understand and remember very short and simple instructions. However, Dr. Boyd specifically restricted Plaintiff to one- to two-step tasks and believed her incapable of more complex tasks, providing additional context to his limitation to very short and simple instructions. Moreover, the ALJ expressly cited, and gave great weight to, the reviewing physicians' opinions Plaintiff "could comprehend, carry out, and maintain concentration, persistence and pace for 1-2 step tasks," but did not mention the reference to short and simple instructions, implying the ALJ did not rely on Dr. Boyd's general finding that Plaintiff was able to understand and remember very short and simple instructions.

The Commissioner additionally argues Plaintiff's ability to perform simple, routine tasks consistent with a reasoning level of 2 is supported by Dr. Alvord's opinion. The ALJ expressly discounted Dr. Alvord's opinion that Plaintiff was moderately limited in all areas except performing simple and repetitive tasks. Even assuming Dr. Alvord's opinion provides support for the ALJ's finding Plaintiff was capable of simple and repetitive tasks, Dr. Alvord did not further opine on whether Plaintiff was limited to one- to two-step tasks or capable of more complex tasks.

PAGE 17 - OPINION AND ORDER

The ALJ's possible reliance on Dr. Alvord's opinion to support his finding Plaintiff is capable of tasks consistent with reasoning level 2 creates an inconsistency between medical opinions which the ALJ must, but failed to, address.

## *Conclusion*

The Commissioner erred in failing to provide the requisite justification for rejecting the opinions of the reviewing physicians or reconciling the inherent conflict between medical opinions. Accordingly, the Commissioner's final decision should be REVERSED and REMANDED for further proceedings consistent with this Order and Opinion.

DATED this 13th day of September, 2021.

JOHN V. ACOSTA
United States Magistrate Judge